IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JERRY L. THOMAS,               )
                                   )
          Plaintiff,        )
                                   )
                                   )     CIV-08-1338-W
v.                             )
                                   )
KATRYNA FRECH, et al.,       )
                                   )
          Defendants.    )

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, an Oklahoma prisoner appearing *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action on December 9, 2008.[1]  In his thirteen-count Complaint, Plaintiff named eighteen correctional officials as Defendants. (Doc. # 1).  Plaintiff filed an Amended Complaint on February 17, 2009, in which he names twenty-four correctional officials as Defendants. (Doc. # 17).  These Defendants are identified as either officials at the James Crabtree Correctional Center ("JCCC"), where Plaintiff was incarcerated[2] at the time the action was filed, or officials of the Oklahoma Department of Corrections ("ODOC"). Plaintiff's claims in the Amended Complaint expanded to twenty. The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

---

[1]Plaintiff is also known as Madyun Abdulhaseeb.

[2]Plaintiff is currently incarcerated at the Lawton Correctional Facility, a private prison in Oklahoma.

§636(b)(1)(B).  In a Report and Recommendation entered March 18, 2009, the undersigned recommended the dismissal without prejudice of the claims in counts two, five, seven, eight, nine, eleven, thirteen, fifteen, sixteen, seventeen, eighteen, nineteen, and twenty asserted in Plaintiff's Amended Complaint.  On April 27, 2009, United States District Judge Lee West issued an Order adopting the Report and Recommendation and dismissing without prejudice the claims set forth in counts two, five, seven, eight, nine, eleven, thirteen, fifteen, sixteen, seventeen, eighteen, nineteen, and twenty. (Doc. # 20).

The remaining sixteen Defendants[3] have now filed a Motion to Dismiss or, alternatively, Motion for Summary Judgment with respect to Plaintiff's seven remaining claims in counts one, three, four, six, ten, twelve, and fourteen.  Defendants contend that Plaintiff has failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), concerning all but one of his remaining claims.  Defendants assert that Plaintiff's claim in count ten of the Amended Complaint fails to state a claim upon which relief may be granted.  Alternatively, Defendants seek the dismissal of Plaintiff's remaining claims pursuant to 28 U.S.C. § 1915(e)(2) on the ground that they are frivolous and/or malicious.  Defendants have also caused the filing of a special report pursuant to <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978), elucidating the

---

[3]Defendants "Nurse Robin" (named in counts two and eight), Janet Dowling (named in counts eleven,  nineteen, and twenty), Susie Salinas (named in count twenty), Chance Cell (possibly but not explicitly named in count eight), "Nurse Sharon" (possibly but not explicitly named in count eight), Felicia Harris (named in counts sixteen and eighteen), and Denaye Prigmore (named in count twenty) were previously dismissed from the action.  Service of process issued to Defendant Arian was returned unexecuted on July 16, 2009.

factual background of Plaintiff's remaining claims.  Plaintiff has responded to Defendants'

dispositive Motion, and the matter is at issue.  For the following reasons, it is recommended

that Defendants' Motion be granted.

I.  Standard of Review

Summary judgment may be granted only where the pleadings and documentary

materials "show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a

motion for summary judgment, the court reviews the evidence and inferences drawn from

the record in the light most favorable to the nonmoving party.  Jiron v. City of Lakewood,

392 F.3d 410, 414 (10th Cir. 2004).  A dispute is "genuine" if a reasonable jury could return

a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  Material facts are those "facts which might affect the outcome of the suit under the

governing law." Id.  If the evidence in favor of the nonmoving party, in this case the Plaintiff,

"is merely colorable, or is not significantly probative, summary judgment may be granted."

Id. at 249-250.

The PLRA, enacted in 1996, directs that: "No action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  "[E]xhaustion requirements are

designed to ... give the agency a fair and full opportunity to adjudicate their claims" before

the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90

(2006). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).  Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007).  Once the affirmative defense is raised, the court must determine whether the plaintiff properly exhausted administrative remedies by "using all steps that the agency holds out, and [by] doing so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

In considering Defendants' assertion that they are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies, Defendants "must demonstrate that no disputed material facts exist regarding the affirmative defense asserted. If the [Defendants] meet[ ] this initial burden, the [P]laintiff must then demonstrate with specificity the existence of a disputed material fact.  If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th

Cir.)(citations omitted), cert. denied, 522 U.S. 914 (1997).

II. Undisputed Facts

It is undisputed that Plaintiff has been incarcerated in the custody of ODOC since 1982 and that the incidents giving rise to this action occurred while Plaintiff was confined at JCCC.   Defendants were at all relevant times either JCCC or ODOC employees.

ODOC's administrative grievance policy is included in the Special Report.   This policy provides inmates with a four-step process for presenting their grievances to correctional officials.  (Special Report, Doc. # 47, att. 15, OP-090124).   The inmate must make an initial effort to resolve the complaint by speaking to an appropriate staff member within three days of the incident.  If the problem is not resolved verbally, the inmate must submit a Request to Staff ("RTS") as a second step in the process.  The RTS must be filed within seven days of the date of the incident.  If not satisfied with the response to the RTS, the inmate must file a grievance with the reviewing authority or, if it is a medical grievance, with the facility's correctional health services administrator ("CHSA") within fifteen days of the incident or the response to the RTS, whichever is later.  At the fourth step, if the inmate is still dissatisfied, the inmate must challenge the reviewing authority or CHSA's response by filing an appeal with the ODOC's administrative review authority or chief medical officer within fifteen days of receiving the response of the reviewing authority or CHSA.  The inmate has exhausted the Oklahoma prison grievance process only after he or she receives a final ruling from the administrative review authority or chief medical officer. See Hemphill v. Jones, No. 09-6009, 2009 WL 2750720, *2 n. 4 (10th Cir. Sept. 1,

2009)(unpublished op.)(describing Oklahoma's prison grievance procedure); <u>Cannon v. Mason</u>, No. 08-7117, 2009 WL 2400272, *2 (10th Cir. Aug. 6, 2009)(unpublished op.)(same).

The record shows that Plaintiff filed eleven grievances with JCCC officials during the relevant time period between October 4, 2008 and December 2, 2008. These grievances are described below.

a. <u>Grievance JCCC-08-88</u>

Plaintiff submitted an RTS dated September 26, 2008, to JCCC CHSA Katrina Frech. In this RTS, Plaintiff

> requested that I be prescribe[d] Omega 3 Fish Oil for my high cholesterol [sic] because of its effective use. Dr. Troutt alleges that it is for tryglicirides [sic] and not cholesterol. He is forcing me to take 1000 mg of Niacin. Niacin causes false positives in drug uranalysis [sic] test. I tested positive for drugs although I never used drugs.

Special Report, Ex. 2, att. 2-a. In response, CHSA Frech advised Plaintiff that "[t]he doctor has prescriptive authority and will make all decisions of what medications will be written." <u>Id.</u> On October 4, 2008, Plaintiff submitted an Inmate/Offender Grievance Report Form to the CHSA. He complained that Dr. Troutt had prescribed him niacin to treat his high cholesterol when fish oil worked better and niacin caused false positive drug test results. <u>Id.</u> CHSA Frech responded to the grievance that "[t]he medical provider has prescriptive authority and will make all decisions of what medications will be written. You are being provided equitable and appropriate health care services." <u>Id.</u> The response also suggested that Plaintiff "submit a Request for Medical Services to discuss any additional health

concerns with the provider." Id.  Plaintiff appealed this grievance response to the ODOC

Medical Services Administrator ("MSA") who responded to Plaintiff on November 18, 2008.

In this response, ODOC MSA McCoy denied the grievance appeal and explained that

relevant information in Plaintiff's medical record  had been obtained and reviewed and that

"[a]ccording to your record, your physician has neither recommended nor prescribed Omega

3 Fish Oil." Id.  Plaintiff completed the four-step grievance process with respect to this claim,

which he asserts in count ten in the Amended Complaint.

     b. Grievance JCCC-08-89

     On September 26, 2008, Plaintiff submitted an RTS to CHSA Katrina Frech in which

he complained that

> [t]he continued, indifferent, calloused commissioned
> prescription medications of metaprolol [sic], amlodopine, and
> HCTZ to treat my medically induced hypertension is destroying
> my kidneys and causing constipation and cramps, and my
> kidney problems have still not been diagnosed and treated.

Special Report, Ex. 2, att. 2-b.  CHSA Frech responded to the RTS on September 26, 2008,

that "[t]he doctor has prescriptive authority and will make all decisions on what medications

will be written.  He has the education and license to make the decision on what medications

are best for you based on your medical examination." Id.

     On October 4, 2008, Plaintiff submitted an Inmate/Offender Grievance Report Form

to CHSA Frech in which he complained that he had "kidney damage" and that he "learned

of this from Dr. Troutt on May 19, 2008," although Dr. Troutt had not prescribed any

treatment or sent Plaintiff to a specialist but had "made it worse by action and continuing to

prescribe ... metoprolol [sic] and amlodopine." Id.  As relief, Plaintiff requested to be sent

to a renal specialist for diagnosis and treatment and to be sent to a facility "that has more than

one doctor," has "delivery of health services in evening, at night, on the weekend, for

emergencies," provides "referrals to specialist during acute or emergency situations," and

"has more than zero physician assistants." Id.  The grievance was returned to Plaintiff

unanswered on October 13, 2008, by JCCC Warden's Assistant Becky Guffy.  Guffy advised

Plaintiff that the grievance was submitted out of time from the date of the incident, which

according to Plaintiff was May 19, 2008, that his signature and/or date was not affixed to the

grievance or RTS, and that contrary to ODOC policy the grievance included more than one

issue or incident.  Plaintiff was advised in this correspondence that he had ten calendar days

from the date of receipt of the grievance to properly resubmit the grievance.  There is no

evidence that Plaintiff appealed the response or that he resubmitted the grievance pursuant

to ODOC policy. Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124,

§ V(A)(7)).

   c. Grievance JCCC-08-90

   On September 10, 2008, Plaintiff submitted an RTS to Dr. Troutt in which he

complained that Dr. Troutt had

> prescribed to me for control of high blood pressure HCTZ,
> Amlodipine, and Metoprolol [sic]. I strongly relow [sic] that my
> suffering from high blood pressure is a side effect to being
> overdosed continuously on drug cocktails.  My blood pressure
> can be controlled with only HCTZ....  It is possible that my
> blood pressure has not been normal since I preped [sic] for
> colonoscopy.  Nowhere else have I been in prison where

> extremely high blood pressure would not have been treated as an
> emergency and brought down immediately with Clonodine and
> constant, watchful on-cite [sic] monitoring...."

Special Report, Ex. 2, att. 2-c. Plaintiff requested that "Amlodopine and Metoprolol [sic] be

discontinued, monitoring be increased to three times weekly, that I be bottomed out on-cite

[sic], and progress be followed on HTCZ, exercise, and diet." Id. CHSA Frech responded

to Plaintiff on September 23, 2008, that

> you can not self diagnose or self prescribe medications. You are
> being sent for a renal artery ultrasound and an echocardiogram
> at OU Medical Center which are both coming up very soon. Let
> the medical providers who have the knowledge, education and
> experience to treat you, decide what is the appropriate route to
> take in your plan of care.

Id. Plaintiff submitted an Inmate/Offender Grievance Report Form to CHSA Frech on

October 4, 2008. In this grievance, Plaintiff complained that the medications prescribed by

Dr. Troutt for treatment of Plaintiff's high blood pressure had caused his blood pressure to

be "intentionally made to [sic] high in May 2008 by two bottles of prescribed sodium nitrate.

This Amlodipine and 100 mg of Metoprolol [sic] has made my stool too hard, increased

cramps in legs, weakness in feet, and damage to my kidneys." Id. Plaintiff requested to be

referred to "a qualified doctor" who could "manage my hypertension and medications

according to 'chronic illness management'" and "other viable alternatives over medications

...." Id.

On October 13, 2008, JCCC Warden's Assistant Guffy returned the grievance to

Plaintiff unanswered for multiple procedural deficiencies, including Plaintiff's submission

of the grievance out of time from the date of the incident, which Plaintiff indicated was in

May 2008, and because it included more than one issue or incident.  Plaintiff was advised in

this correspondence that he had ten calendar days from the date of receipt of the grievance

to properly resubmit the grievance.  There is no evidence that Plaintiff appealed this response

or that he resubmitted the grievance pursuant to ODOC policy. Special Report, Ex. 18

("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

     d. <u>Grievance JCCC-08-96</u>

     In an RTS dated October 1, 2008, Plaintiff complained to CHSA Frech that he

> was refused medical care of [sic] an emergency medical issue
> Thursday night, September 25, 2008, at approximately 11:45
> a.m.  My damaged kidneys tried to shut down, causing
> excruciating pain and cramps to my feet and legs, temporarily
> crippling me.  No staff came to my aid.  No emergency person
> was summoned.  No one has seen me yet.  My life was in
> danger.

Special Report, Ex. 2, att. 2-e.  No response appears on the RTS form.  In an Inmate/Offender

Grievance Report Form dated October 21, 2008, Plaintiff stated he was denied emergency

medical care on September 25, 2008, "for a failing kidney" and "excruciating pain [and]

cramps in [his] legs and feet" and that "[t]he duty officer refused to provide emergency care."

<u>Id.</u> Plaintiff also complained that he received no response to a "sick call request" on

September 26, 2008, and that CHSA Frech had "refused to respond" to his RTS dated

October 1, 2008, concerning this incident. <u>Id.</u>  As relief, Plaintiff requested "more doctors,"

the provision of doctors, physician's assistants, and nurses for emergency care of inmates "24

hours a day, seven days a week," and answers to sick call requests "within 48 to 72 hours and

emergency care immediately." Id.

JCCC Warden's Assistant Guffy responded on October 23, 2008, that the grievance was being returned to Plaintiff unanswered because of multiple procedural deficiencies, including Plaintiff's failure to provide a written staff response to his RTS, the submission of the grievance was out of time from the date of the incident, and more than one issue or incident was included in the grievance. Plaintiff was advised in this correspondence that he had ten calendar days from the date of receipt of the grievance to properly resubmit the grievance. Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

Instead of resubmitting the grievance in order to correct the deficiencies, Plaintiff submitted an appeal to the ODOC MSA on October 24, 2008. Plaintiff complained that he had submitted a grievance on October 21, 2008, to CHSA Frech, which he identified as Grievance JCCC-08-96. Special Report, Ex. 2, att. 2-d. Plaintiff stated that his grievance concerned a denial of emergency medical care on September 25, 2008, "for a failing kidney" and "excruciating pain [and] cramps in [his] legs and feet." Id. Plaintiff further stated that his grievance was returned unanswered on October 23, 2008, because the warden's assistant determined it was not timely submitted and it included more than one issue or incident. ODOC MSA McCoy responded on November 26, 2008, that the grievance appeal was being returned to Plaintiff unanswered because it contained multiple procedural deficiencies, including Plaintiff's failure to provide copies of the response to his RTS and grievance response with the appeal, his failure to submit the grievance within 15 calendar days of the

incident or the date of the response to the RTS, and the improper inclusion of additional attachments.

e. Grievance JCCC-08-99

On October 20, 2008, Plaintiff submitted an RTS to Dr. Troutt in which he complained that "[a]s of this date ... I am and have been suffering from cramps in my feet, legs as well as weakness in my feet from taking Amlodopine prescription medication that I believe is damaging my kidneys." Special Report, Ex. 2, att. 2-f. Plaintiff requested that Dr. Troutt "stop endangering my life by experimenting with this drug and send me to a specialist who will diagnose and prescribe the correct medication for one with a damaged kidney." Id. In a response dated October 28, 2008, CHSA Frech advised Plaintiff that he had been referred to OU for a consultation. "You went on 10-7-08 for a renal artery ultrasound and an echocardiogram. We are awaiting the results." Id.

On October 29, 2008, Plaintiff submitted an Inmate/Offender Grievance Report Form to CHSA Frech in which he presented the issue raised in the RTS. Id. He stated in the grievance that he was requesting to "be sent to renal specialist, be taken of [sic] Amlodopine, be diagnosed and treated by special[ist], and have killer Troutt taken off my medical case." Id. On November 13, 2008, the grievance was returned to Plaintiff by JCCC Warden's Assistant Guffy unanswered because Plaintiff had "indicated this issue has already been answered in JCCC-08-89. Getting an additional RTS about the same issue does not change the date of incident which as indicated by [Plaintiff] was May 2008. This issue is out of time." Id. Plaintiff was advised in this correspondence that he had ten calendar days from

the date of receipt of the grievance to properly resubmit the grievance. Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

Instead of resubmitting the grievance in order to correct the deficiencies, Plaintiff submitted an appeal to ODOC MSA McCoy. Plaintiff's grievance appeal was returned to him unanswered by ODOC MSA McCoy for procedural deficiencies, including Plaintiff's improper attachment of additional pages with the grievance appeal and his failure to submit a completed grievance response with his appeal. Id. Plaintiff was further advised to refer to his grievance restriction letter dated December 10, 2008. Id.

   f. Grievance JCCC-08-100

On October 20, 2008, Plaintiff submitted an RTS to Dr. Troutt in which he complained that "[f]rom 10-13-08 to 10-20-08, I have suffered leg cramps, feet cramps, weakness in the ball of both feet, and damage to my kidneys from daily taking 100 mg of metoprolol [sic] over that period of time." Special Report, Ex. 2, att. 2-g. He requested that Dr. Troutt refer him "to a specialist for diagnosis and treatment." Id. CHSA Frech responded to the RTS on October 28, 2008, that Plaintiff had been referred to OU for consultative evaluation, that Plaintiff had undergone a renal artery ultrasound and an echocardiogram, and that the medical staff was waiting on the test results. Id.

On October 29, 2008, Plaintiff submitted a grievance in which he again complained of cramps in his legs and feet and weakness in his feet as a result of the medication Metropolol prescribed for him by Dr. Troutt. Plaintiff stated he believed this medication was "damaging my kidneys." Id. Plaintiff further complained that testing had been conducted and

13

he had not received the test results "in over three weeks and no course of treatment." Id.  He requested again to be referred "to a specialist for diagnosis and treatment and [to] be taken out of the care of Dr. Troutt." Id.

This grievance was returned to Plaintiff by JCCC Warden's Assistant Guffy on November 13, 2008, unanswered because it was procedurally deficient because the issue had "already been answered in JCCC-08-89," the grievance included more than one issue or incident, and the grievance was out of time from the date of the incident on May 19, 2008, as reported by Plaintiff. Id.  Plaintiff was advised in this correspondence that he had ten calendar days from the date of receipt of the grievance to properly resubmit the grievance. Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

Instead of resubmitting the grievance in order to correct the noted deficiencies, Plaintiff submitted an appeal to ODOC MSA McCoy.  ODOC MSA McCoy returned the grievance appeal to Plaintiff on December 29, 2008.  Plaintiff was advised that the grievance was being returned unanswered for multiple procedural deficiencies, including Plaintiff's failure to submit a completed response to his grievance from the reviewing authority. Id. Plaintiff was also advised to refer to  Plaintiff's "grievance restriction letter dated December 10, 2008." Id.

g. Grievance JCCC-08-101

On October 27, 2008, Plaintiff submitted an RTS to CHSA Frech in which he complained that "[t]hirty-one (31) days after I requested emergency medical care for failing kidneys 9-26-08, deliberately indifferent Dr. Troutt saw me today 10-27-08 in a pretense of

14

diagnosis of my claim without examining me." Special Report, Ex. 2, att. 2-h.  He requested to be referred "to impartial, objective doctor for examination, blood test, liver test, kidney test. Take me off all high blood pressure medication except HCTZ.  Provide me with actual, compensatory, and punitive damages for my injury and your failure to immediately respond to life-threatening emergency." Id.  No response appears on the RTS form.

On November 10, 2008, Plaintiff submitted an Inmate/Offender Grievance Report Form to CHSA Fresh.  He complained in the grievance that he had requested an appointment with Dr. Troutt on September 26, 2008, "concerning an emergency kidney failing" but that Dr. Troutt did not see him until October 27, 2008, and Dr. Troutt did not "determine what was wrong or prescribe any treatment." Id.  Plaintiff also complained that CHSA Frech had refused to answer his RTS on this issue. Id.  Plaintiff requested that "deliberately indifferent Troutt" be removed from treating Plaintiff, that he be provided a "caring, compassionate health care provider," and that he be provided "protection from retaliatory, vindictive treatment from Troutt designed to kill me." Id.

On November 13, 2008, JCCC Warden's Assistant Guffy returned Plaintiff's grievance unanswered because it did not contain a written staff response to his RTS and it included more than one issue or incident. Id.   Plaintiff was advised in this correspondence that he had ten calendar days from the date of receipt of the grievance to properly resubmit the grievance.  Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

Instead of resubmitting the grievance in order to correct the deficiencies, Plaintiff

15

submitted an appeal to ODOC MSA McCoy.  ODOC MSA McCoy returned Plaintiff's

grievance appeal unanswered because of multiple procedural deficiencies, including

Plaintiff's attachment of additional pages with the grievance appeal and Plaintiff's failure to

include a completed grievance response with the appeal. Id. Plaintiff was again advised to

refer to his grievance restriction letter dated December 10, 2008.  Id.

      h. Request to Staff to Warden Parker dated November 25, 2008

On November 25, 2008, Plaintiff submitted an RTS to JCCC Warden Parker in which

he complained that

> [a]fter I testified in a deposition Nov. 5, 2008, about the
> unconstitutionality of TBN and Three Angels broadcast
> television, You, Guffy, Denton, Gwinn, Page, Bell, Drawbridge,
> Morton, Oakley, Anderson, Redman, and Dowling incited
> the inmates against me Nov. 9, 2008, by threatening to prevent all
> inmates who don't own a T.V. from watching their bunkmate or
> cellmate's T.V. in retaliation against me, to try to get me hurt,
> or killed.

Special Report, Ex. 5.  The action Plaintiff requested was "[s]top bullying, retaliating against

against [sic] me, answer issue on merits, confess conduct, pay me damages." Id.

On December 1, 2008, Warden Parker responded to the RTS that the RTS was being

returned to Plaintiff unanswered because the date of incident given by Plaintiff was

November 9, 2008, and the RTS was therefore untimely pursuant to ODOC policy, which

requires the offender to submit the RTS within seven days after the incident.  Also, Plaintiff

was advised that the RTS was improper because it requested five actions be taken and,

pursuant to ODOC policy, only one issue may be addressed in an RTS.  Plaintiff was further

16

advised that if he felt threatened he could request protective measures.  There is no evidence that Plaintiff submitted a grievance concerning the issue raised in the RTS.

i. <u>Grievance JCCC-08-102</u>

In an RTS dated November 3, 2008, Plaintiff complained to Deputy Warden Dowling that he had been informed by his cousin on November 2, 2008, that his aunt died October 27, 2008, and that his sister had called the facility to inform him of the death of his aunt but that "[n]o member of JCCC staff informed me of my mother's sister's death and I did not know until 11-2-08." <u>Id.</u>  The action Plaintiff requested was "[e]nd cowardly, calloused, egregious, systemic pattern of retaliatory behavior perpetrated against me." <u>Id.</u>  Deputy Warden Dowling responded to the RTS on November 4, 2008, that "[t]here is no cowardly, calloused, egregious, systematic pattern of retaliatory behavior being perpetrated against you" and expressed her condolences for Plaintiff's loss.  <u>Id.</u>

On November 11, 2008, Plaintiff submitted a grievance to Warden Parker in which he asserted the following:

> On Nov. 2, 2008, I learned on the telephone from my cousin ... that my aunt ... died October 27, 2008, and that my sister ... called JCCC official around October 27, 20008, to inform me and to arrange for me to view my aunt's remains at the funeral home.  Because of the contempt for me by JCCC officials, they did not inform me of my aunt's death until after her funeral.

Special Report, Ex. 12. As relief for this grievance, Plaintiff requested that Warden Parker "[t]ell me when the call came from my sister, what she was promised, who received the call and who refused to answer and inform [sic] of my aunt's death, arrange through chapel for

me to view any video of my aunt's Nov. 1, 2008, funeral." Id.  The grievance was returned to Plaintiff unanswered by Warden's Assistant Guffy because Plaintiff had improperly included more than one issue or incident and had requested five issues be answered. Id. Plaintiff was advised in this correspondence that he had ten calendar days from the date of receipt of the grievance to properly resubmit the grievance.  Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § V(A)(7)).

Instead of resubmitting the grievance in order to correct the deficiencies, Plaintiff submitted an appeal to ODOC MSA McCoy.  On December 29, 2008, ODOC MSA McCoy responded to Plaintiff's grievance appeal that the appeal was being returned unanswered because it did not include a completed grievance response, it improperly included attachments, and it did not concern a medical issue. Id.  Plaintiff was also referred to the grievance restriction letter dated December 10, 2008.

j. Grievance JCCC-08-103

On November 29, 2008, Plaintiff submitted an RTS to JCCC Deputy Warden Dowling in which Plaintiff stated:

> On 10-23-08 Warden's Assistant Becky Guffy usurped the function of the Correctional Health Services Administrator in deciding Grievance JCCC-08-96 pursuant to OP-090124.V.A.7 instead of allowing the CHSA to exercise her obligation to respond to my grievance pursuant to OP-090124.V.A.5.

Special Report, Ex. 8.  In response to this RTS, Deputy Warden Dowling stated that

> Guffy did not usurp the function of the CHSA .... Mrs. Guffy is the grievance manager as designated by Warden Parker and reviewed JCCC-08-96 in accordance with ODOC 090124.  A

18

> cover sheet outlining the defects was attached.  You have the
> opportunity to correct the defects and re-submit the grievance.

Id.  Plaintiff submitted an Inmate/Offender Grievance Report Form on November 11, 2008, to Warden Parker in which he repeated the issue raised in the RTS.  He complained of "retaliatory governmental interference." Id.  In a response to this grievance dated November 18, 2008, Acting Warden Redman denied relief and stated:

> As designated by Warden Parker, Mrs. Guffy is the grievance
> manager.  As such, it is her duty to review all grievances for
> procedural correctness.  As evidenced by JCCC-08-88, if the
> grievances are procedurally correct, they are then forwarded to
> the proper respondent. JCCC-08-96 had several deficiencies as
> outlined on the cover letter that was attached.  It is your
> responsibility to familiarize yourself with ODOC OP-090124
> and submit grievances properly.

Id.  Plaintiff submitted an appeal of the grievance response, and on December 29, 2008, ODOC MSA McCoy responded that the grievance appeal was being returned to Plaintiff unanswered because (1) Plaintiff had improperly affixed written comments to the front page of the grievance response, (2) "[t]he nature of your concern involves a complaint against staff," and (3) Plaintiff was again directed to the "grievance restriction letter dated December 10, 2008." Id.

k. Grievance JCCC-08-111

On November 13, 2008, Plaintiff submitted an RTS to JCCC Warden Parker in which he complained that Warden Parker was "violating my 14th Amendment right to equal protection by not providing me, who does not own a T.V., with a T.V. to watch in the dayroom of every JCCC unit like similarly situated inmates at all DOC and private facilities."

Special Report, Ex. 6-b.  On November 18, 2008, Acting Warden Dowling responded that "[t]elevisions are a privilege not a right. Your request is denied." Id.

On November 25, 2008, Plaintiff submitted an Inmate/Offender Grievance Report Form to Warden Parker regarding this issue.  Plaintiff requested that Warden Parker "[p]rovide T.V.s in all JCCC unit dayrooms bought with money from the employee/inmate welfare fund like similarly situated indigent inmates throughout DOC."  On December 8, 2008, JCCC Warden's Assistant Guffy returned the grievance unanswered because "[g]rievances may not be submitted on behalf of other offenders."  Plaintiff was advised he had ten days to resubmit his grievance/RTS in order to correct the deficiency.  However, there is no record reflecting that Plaintiff resubmitted the grievance.

Plaintiff submitted an Inmate/Offender Grievance Report Form to ODOC Director Jones dated November 11, 2008, in which Plaintiff asserted that

> [t]he Defendants in Thomas v. Guffy, et al., CIV-07-823-W hatched a plan Nov. 4, 2008, in retaliation for my raising the issues of TBS and Three Angels broadcast network in a deposition I gave Nov. 5, 2008, designed to make other inmates to kill me because Defendants are conducting a misinformation campaign among the inmates of JCCC to convince them that it is my fault that inmates without a T.V. at JCCC can no longer watch any other inmate's T.V. with him although inmates have always watched each other's T.V.

Special Report, Ex. 6-a.  Plaintiff stated that he did not informally resolve this grievance because "defendants Parker, Redman, Gwinn, Page, Guffy, and Morton as well as Lt. Irvin were involved in the conspiracy to take T.V. privileges from all JCCC inmates and blame me." Id.  This grievance, designated Grievance 08-2620, was returned to Plaintiff

unanswered on November 18, 2008, by ODOC Director's Designee Morton with the explanation that the grievance was "[n]ot of a sensitive/emergency nature" and Plaintiff must therefore complete the standard grievance process. Id.

l. Grievance JCCC-08-115

On November 25, 2008, Plaintiff submitted an RTS to Deputy Warden Dowling in which he complained:

> This morning at 6 A.M. 11-25-08, the white Christian warden and the white Christian food supervisors fed the predominantly Christian inmates a "special" Christian breakfast of Christian swine sausage while feeding me cholesterol-raising peanut butter, showing religious discrimination against me.

Special Report, Ex. 24.  He requested "a special meal of fried fish" when "a special swine meal" is served to "your brother Christians." Id.  In a response to this RTS dated December 2, 2008, Deputy Warden Dowling stated that pursuant to ODOC policy concerning special diets, "DOC will establish a modification of the master menu to provide alternate protein sources for any inmate unable to eat the regular protein source because of religious requirements.  The alternative protein source will be the same as on the vegetarian diet." Id.

Dowling denied the RTS and explained to Plaintiff that fish was not listed on the master menu for vegetarian diets. On December 2, 2008, Plaintiff submitted a grievance to Warden Parker in which he raised the issue contained in his RTS and stated that "serving me peanut butter substitute [violated] the fourteenth amendment's equal protection clause" and that Warden Parker should "[p]urchase turkey sausage, or beef bacon or fish for the entire meat eating population instead of catering to Christians and discriminating against non-pork

eaters, especially Muslims." Id.

In a letter dated December 10, 2008, addressed to Plaintiff from JCCC Acting Warden Redman, Plaintiff was advised that his grievance was being returned unanswered because of "[t]he repeated submitting of grievances or 'Requests to Staff' about an issue previously addressed by staff in their written response" and "[t]he continued procedural defects, such as submitting additional pages, after having been previously warned." Id. The letter set forth a portion of the ODOC grievance policy concerning restrictions that may be imposed for abuse or misuse of the grievance process. Plaintiff was advised that

> on 11-24-08, you were warned four times of grievance restriction. Apparently you did not take this warning as seriously as intended. Therefore, since you refuse to follow the inmate/offender grievance process, I am placing you on grievance restriction from December 10, 2008 through December 10, 2009. You are required to follow steps outlined in Section IX of OP-090124 prior to submitting a grievance at any level. Keep in mind that further abuses are grounds for additional restrictions.

Id.

III. Exhaustion of Administrative Remedies - Count One

In count one, Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Dr. Troutt, a physician at JCCC, due to his deliberate indifference to Plaintiff's medical needs. As factual support, Plaintiff asserts that he "suffered kidney damage later [sic] part of 2007" and "liver/kidney function testing" of Plaintiff was conducted in January 2008. However, Plaintiff alleges he was not diagnosed or treated for the kidney damage and did not learn the cause of his "crippling cramps" until three to four months after the testing.

He also names in this claim Defendants Arian, a physician's assistant at JCCC, and JCCC CHSA Katryna Frech.

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning all of his claims prior to bringing his § 1983 action in federal court. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." Fields v. Okla. State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007). See Hoover v. West, 93 Fed. Appx. 177, 181 (10th Cir. 2004)(unpublished op.)("Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy 'unavailable' and a court will deem that procedure 'exhausted.'")(citations omitted).

According to ODOC policy, it is the reviewing authority who makes the determination whether the grievance or RTS was timely submitted, whether the instructions for submitting a grievance were followed, and whether the grievance contains more than one issue. Special Report, Ex. 18 ("Inmate/Offender Grievance Process," OP-090124, § VI(A)(2)). If the inmate/offender does not comply with the instructions set forth in the administrative grievance policy the grievance may be returned unanswered for proper completion. Id. (OP-

23

090124, § V(A)(7)).  The inmate's continued failure to follow instructions for submitting grievances may result in grievance restrictions being imposed. Id. (OP-090124, §§ V(A)(7), IX)).

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning this claim prior to bringing his § 1983 action in federal court, and Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative remedies as to this claim.   In Plaintiff's grievance designated JCCC-08-89, Plaintiff expressed the same claim he asserts in count one of the Amended Complaint.  However, the record shows that Plaintiff's grievance asserting this issue was returned to him with correspondence advising him of the procedural deficiencies in the grievance and his opportunity to resubmit the grievance in order to correct those deficiencies.  The record shows Plaintiff failed to resubmit his grievance or complete ODOC's four-step grievance process.

Although Plaintiff alleges in his responsive pleading that Defendants' "retaliation against Plaintiff caused [his] non-exhaustion," Plaintiff has provided no evidentiary support for this claim. In his attached "Affidavit on Exhaustion of Count I," Plaintiff asserts that Dr. Troutt informed him on May 19, 2008, that he "had suffered kidney damage."  This is the date that JCCC and ODOC officials relied on in finding that Plaintiff's administrative

grievance with respect to this issue was not timely filed.[4]  Thus, Plaintiff has not shown that correctional officials impeded his ability to exhaust administrative remedies.  Viewing the undisputed facts in the light most favorable to the Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this claim.  Defendants are entitled to summary judgment concerning Plaintiff's claim in count one due to Plaintiff's failure to exhaust administrative remedies.

IV. Exhaustion of Administrative Remedies - Count Three

In count three of the Amended Complaint, Plaintiff alleges that "staff deliberately indifferently denied me emergency treatment for failing kidneys in violation of the 8th Amendment's prohibition against cruel and unusual punishment."  As supporting facts, Plaintiff asserts that he

> suffered excruciating [sic] cramps in feet, legs, and thighs from kidney disease 9-25-08.  Security officer Deweese, Cpt. Myers, and Lt. Frech refused emergency care.  I sent medical request to medical 9-26-08....Troutt saw me 10-27-08, but no diagnosis or treatment.  I also received response to medical request 10-27-08, a month after I nearly died and four inmates assisted me as I lay helplessly on the floor.  They messaged [sic] my legs and feet, gave me water, picked me up off the floor.  No help from Deweese, Cpt. Myers, Lt. Frech, Dr. Troutt, CHSA Frech, Nurses Robin, Sandi, and Amber, and MSA McCoy.

Amended Complaint, at 3.

_____

[4]Plaintiff's assertion that he somehow could not timely file his RTS because "Trout informed me of my kidney damage three months past my seven day deadline for initiating the informal" RTS is disingenuous.  No correctional official has reasoned that Plaintiff's RTS and grievance on this issue was untimely because it was not filed within seven days of the date Plaintiff alleges Dr. Troutt was informed of Plaintiff's "kidney damage."

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning this claim prior to bringing his § 1983 action in federal court, and Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative remedies as to this claim. Plaintiff raised the same issue he presents in count three in his grievances designated JCCC-08-96 and JCCC-08-101. He also asserted in these grievances that JCCC CHSA Frech had failed to respond to his RTS concerning this issue. The undisputed record shows that Plaintiff did not complete the ODOC's administrative review process in either of these grievance submissions.

Plaintiff contends that he timely presented his grievances after CHSA Frech failed to respond to his RTS. Pursuant to ODOC's administrative grievance policy, "[i]f there has been no response [to an RTS submitted to a correctional staff member] in 30 calendar days of submission, the inmate may file a grievance to the reviewing authority with evidence of submitting the "Request to Staff" to the proper staff member. The grievance may assert only the issue of the lack of response to the request to staff." Special Report, Ex. 18 (OP-090124, § IV(B)(7)). The record shows Plaintiff did not comply with this provision. In his grievance, Plaintiff asserted the issue of the staff member's failure to respond to his RTS as well as other issues in the grievance. Plaintiff's failure to follow the established ODOC administrative grievance procedure does not render the procedure unavailable.

In another civil action filed by Plaintiff in this Court, the Court recognized that Plaintiff "is intimately familiar with the compliance requirements of the ODOC grievance procedure ...." Thomas v. Parker, 2008 WL 2894842, *7 (W.D. Okla. July 25,

26

2008)(adopting Report and Recommendation of May 27, 2008), aff'd, 318 Fed. Appx. 626 (10th Cir. 2009).  See also Thomas v. Guffy, Case No. CIV-07-823-W (Order, West, D.J.) (Doc. # 105, at 24)(W.D. Okla. July 20, 2009).  Plaintiff has submitted his "Affidavit on Exhaustion of Count III" as an attachment to his responsive pleading. See Plaintiff's Response, attachment 1("Plaintiff's Affidavit on Exhaustion of Count III"). Plaintiff argues in his "Affidavit" that this Court should review his grievances to determine whether they were procedurally defective.  This Court has "no obligation to examine each of the ODOC's denials of ... [Plaintiff's] grievances to see whether each grievance was in fact flawed." Fields v. Stuchell, 511 F.3d 1109, 1112-1113 (10th Cir. 2007)(citation omitted).

Plaintiff complains in his "Affidavit" that he could not complete the administrative review process because "the facility head did not provide me ... with a grievance appeal form."  This is a disingenuous and frivolous argument.  Plaintiff never resubmitted the grievance to the appropriate reviewing authority after he was given the opportunity to resubmit the grievances in order to correct the procedural defects in his grievances. Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this claim.   Moreover, Plaintiff has not shown that correctional officials impeded his ability to exhaust administrative remedies.  Defendants are entitled to summary judgment regarding Plaintiff's claim in count three due to Plaintiff's failure to exhaust administrative remedies.

V. Exhaustion of Administrative Remedies - Count Four

In count four of the Amended Complaint, Plaintiff contends that Defendant "Troutt's

deliberately indifferent prescription of Metroprolol [sic] was cruel and unusual punishment." As supporting facts, Plaintiff asserts that he "suffered high blood pressure, cramps, dizziness, muscle fatigue, and weakness in feet from 10-13-08 to 10-20-08 from being treated at that time with Metroprolol [sic] by Dr. Troutt.  Guffy usurped duties of CHSA Frech, returned grievance unanswered.  I mailed appeal to HSA McCoy [who] returned it unanswered.  I sent it 11-23-08."

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning this claim prior to bringing his § 1983 action in federal court, and Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative remedies as to this claim.   Plaintiff raised the issues he asserts in count three in his grievances designated JCCC-08-89, JCCC-08-90, JCCC-08-100, and JCCC-08-103.  The undisputed record shows that Plaintiff did not complete the ODOC administrative grievance process with respect to any of these grievances.

In Plaintiff's "Affidavit on Exhaustion of Count IV" attached to his responsive pleading, Plaintiff argues that the Court should review his grievances in order to determine whether they were procedurally flawed.  The Court is not obligated to do this, and Plaintiff has provided no facts to support his conclusory assertion that Defendants "Guffy and Frech inhibited my ability to exhaust available procedures in retaliation for my attempting to sue them for my kidney disease."  Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this claim.  Moreover, Plaintiff has not shown that correctional

officials impeded his ability to exhaust administrative remedies.  Defendants are entitled to summary judgment regarding Plaintiff's claim in count four due to Plaintiff's failure to exhaust administrative remedies.

VI. Exhaustion of Administrative Remedies - Count Six

In count six of the Amended Complaint, Plaintiff alleges that "Dr Troutt's being the only doctor for me and over 900 other inmates [at JCCC] is cruel and unusual punishment." As supporting facts, Plaintiff contends that "[a]s of 11-12-08, Dr. Troutt is the only doctor at JCCC.  This understaffing causes him to be deliberately indifferent.  He fails to manage my acute and chronic care.  He fails to track my medications, cholesterol, [and] hypertension. No diagnosis or treatment of kidneys.  Frech returned it unanswered."

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning this claim prior to bringing his § 1983 action in federal court, and Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative remedies as to this claim.   Plaintiff included a request for relief in the form of "more doctors" at JCCC in his Grievance JCCC-08-96.  However, the issue raised in this grievance was the denial of emergency medical treatment on September 25, 2008.  Plaintiff did not specifically assert in an RTS or grievance that Dr. Troutt had failed to track his medications or medical conditions.

In JCCC-08-101, Plaintiff asserted in his grievance that Dr. Troutt's failure to diagnose or treat his "emergency kidney failing" constituted deliberate indifference to Plaintiff's medical needs.  In another RTS submitted by Plaintiff to JCCC CHSA Frech on

November 12, 2008, Plaintiff complained that "[t]he fact that as of the date of 11-12-08 you have no more than one attending physician on staff at JCCC to manage the health care of more than 900 inmates constitutes deliberate indifferent cruel and unusual punishment." Defendants' Motion to Dismiss/Motion for Summary Judgment and Brief in Support, Ex. 1. This RTS was returned to Plaintiff by CHSA Frech unanswered with the explanation that Plaintiff "may not submit a Request to Staff on the behalf of another offender. You have not specifically identified how this complaint directly affects you." Id. The correspondence also contained a warning concerning abuse of the offender grievance process.

The record shows that Plaintiff did not complete all steps of the ODOC administrative grievance process with respect to his claim in count six. Plaintiff was advised of the deficiencies in Grievance JCCC-08-101 and given the opportunity to resubmit the grievance to correct those deficiencies. Plaintiff did not follow this procedure but instead appealed the reviewing authority's correspondence to him. This appeal was also found to be procedurally deficient.

In his responsive pleading, Plaintiff complains that Defendant "Frech deliberately refused to follow DOC grievance procedures" because she did not answer his RTS directed to her on the issue of "understaffing of physicians" at JCCC. However, the established ODOC grievance procedure clearly provides a method for grieving a correctional official's failure to respond to an RTS or grievance. Plaintiff did not follow this procedure. Plaintiff's failure to complete the administrative grievance process concerning his claim in count six does not render the administrative grievance process unavailable, as Plaintiff suggests.

30

Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this claim.   Moreover, Plaintiff has not shown that correctional officials impeded his ability to exhaust administrative remedies.   Defendants are entitled to summary judgment regarding Plaintiff's claim in count six due to Plaintiff's failure to exhaust administrative remedies.

VII. <u>Exhaustion of Administrative Remedies - Count Twelve</u>

In count twelve of the Amended Complaint, Plaintiff asserts that "Defendants violated my 14 [sic] Amendment right to equal protection of the law."   In support of this claim, Plaintiff asserts that he provided testimony in a deposition in another lawsuit he filed in this Court, <u>Thomas v. Guffy</u>, Case No. CIV-07-823-W, on November 5, 2008, and "testified about the Trinity Broadcast Network (TBN) and the Three Angels broadcast network violating the establishment clause of 1st Amendment."   Plaintiff asserts he "also testified that I don't have a personal T.V., but that I watch my bunkmate's T.V."   Plaintiff further asserts that

> sometime after November 5, 2008, [Oklahoma Assistant Attorney General] Rytter contacted my attorneys and informed them that I would be ordered not to watch my bunkmate's T.V. On November 9, 2007 [sic], Officer Shaw and Lt. William Irvin nervously approached me and told me that I could not watch my bunkmate's T.V.  No other inmate at JCCC was given this order. No policy exists that forbid [sic] one on Levels 2, 3, and 4 from watching T.V.   Similarly situated medium and maximum security inmates are allowed to share their bunkmates and cellmates [sic] televisions.  It is a defacto custom, tradition, practice to allow inmates to watch T.V.  It is a penological interest that watching T.V. is an excellent security and indirect control.  Parker, Guffy, Anderson, Redman, Gwinn, Denton;

31

JCCC-08-113.

Amended Complaint, "cause of action attactment [sic] 2."   According to an Incident/Staff

Report completed by correctional official Shaw on November 9, 2008, Plaintiff was observed

watching a television that was not his television and he was advised that he was violating unit

three rules.  Plaintiff reportedly stated: "This is retaliation and it is on now man." Special

Report, Ex. 17.

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative

remedies concerning this claim prior to bringing his § 1983 action in federal court, and

Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative

remedies as to this claim.   The record shows that Plaintiff submitted an RTS to Defendant

Gwinn dated November 9, 2008, in which Plaintiff complained that on that same date "Lt.

Irvin visited Officer Shaw on Unit 3 and ordered him to inform me that I cannot watch my

cell partner's television because it violated JCCC policies.  Lt. Irvin is discriminating against

me in retaliation for testimony I made in a deposition November 5, 2008."  Special Report,

Ex. 6-c.  Plaintiff requested that Gwinn "stop all inmates at JCCC who do not have their own

T.V. from watching any other inmate's T.V. [,] provide T.V.'s in all day rooms at JCCC

[and] apply policies equally to all inmates at JCCC." Id.   JCCC Unit Manager Gwinn

responded to Plaintiff on November 24, 2008, that "[o]fficers have been advised to enforce

the rules across the board; you are not being singled out.  In the capacity of Unit Manager,

I do not directly supervise security officers; therefore, should you decide to continue this

issue, file with the Chief of Security and not this office." Id.

32

Plaintiff submitted another RTS to JCCC Warden Parker on December 1, 2008 (according to the stamp-filed date appearing on the RTS) in which he complained that certain JCCC and ODOC officials had "incited the inmates against me [on] Nov. 9, 2008, by threatening to prevent all inmates who don't own a T.V. from watching their bunkmate or cellmate's T.V. in retaliation against me, to try to get me hurt, or killed." Special Report, Ex. 5. On this RTS form, Plaintiff states that he had previously submitted a grievance on this same issue on November 11, 2008, to "DOC headquarters." Id. This RTS was returned to Plaintiff on December 1, 2008, and Warden Parker advised Plaintiff that the RTS was being returned unanswered because it was untimely submitted according to the established ODOC grievance procedure and because, again contrary to the established grievance procedure, the RTS included more than one issue.  Id.

Plaintiff's Grievance JCCC-08-111 raised two issues, one of which was similar to the issue raised in count twelve.  He complained in this grievance that (1) correctional officials were denying him equal protection by not providing televisions in the day room of the facility and (2) correctional officials were retaliating against him for his previous civil action by misinforming inmates at JCCC that it was Plaintiff's fault they could no longer watch their cellmates' televisions.  This grievance was returned to Plaintiff unanswered with the advice that he had the opportunity to resubmit the grievance to correct a procedural deficiency.  There is no record that Plaintiff followed this advice and resubmitted a corrected grievance.    In Plaintiff's "Affidavit on Exhaustion of Count XII" attached to his responsive pleading, Plaintiff admits that his RTS and grievance raising the claim asserted in count

twelve were returned to him because they were not timely submitted in accordance with ODOC's administrative grievance procedure.   Plaintiff contends that "[t]he RTS and the grievance were returned unanswered in retaliation for my filing CIV-07-823-W and testifying in a deposition on November 5, 2008, about the unconstitutional practices of Defendants ...." This subjective belief is not sufficient to infer a retaliatory motive.   Plaintiff's RTS to Defendant Gwinn was returned to him with the explanation that the facility's rules were being applied equally by JCCC correctional officers to all inmates and that the Chief of Security was the proper individual to which to direct his complaint. Plaintiff's RTS submitted to Warden Parker was returned to him unanswered because it was not submitted within the time period specified in the established ODOC administrative grievance procedure. Plaintiff's failure to complete the administrative grievance process concerning his claim in count twelve does not render the administrative grievance process unavailable, as Plaintiff suggests.

Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this claim.   Moreover, Plaintiff has not shown that correctional officials impeded his ability to exhaust administrative remedies.  Defendants are entitled to summary judgment regarding Plaintiff's claim in count twelve due to Plaintiff's failure to exhaust administrative remedies.

VIII. Exhaustion of Administrative Remedies - Count Fourteen

In count fourteen of the Amended Complaint, Plaintiff contends that "Dr. J. Troutt's

34

deliberately indifferent medical treatment of Plaintiff damages his aeortic [sic] heart valve." Plaintiff supports this claim by asserting that on December 10, 2008, Dr. Troutt informed him "that a cardiologist diagnosed [Plaintiff] as having suffered damage to [his] aeortic [sic] heart valve" based on the results of an unspecified "ultra sound [sic] and a sonogram." Plaintiff surmises that his "heart was damaged by medications Troutt forced me to take" and that "Troutt has acted as a go-between between [sic] me and the heart specialist, telling him what he wants him to know and what he wants me to know, but preventing direct contact between us. No treatment has been planned."

Plaintiff is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies concerning this claim prior to bringing his § 1983 action in federal court, and Defendant has asserted the affirmative defense of Plaintiff's failure to exhaust administrative remedies as to this claim. In the "Affidavit" attached to Plaintiff's responsive pleading, Plaintiff admits that he did not exhaust administrative remedies concerning this claim. He asserts that the administrative grievance procedure was unavailable because Dr. Trouttt did "not inform[ ] me in a timely manner of the test results" until December 10, 2008. This argument is disingenuous. No correctional official has denied Plaintiff's request for administrative relief as to this issue on the ground that Plaintiff failed to initiate the administrative remedy process prior to the date he was actually informed of the cardiac test results.

Viewing the undisputed facts in the light most favorable to Plaintiff, there is no material issue of fact regarding Plaintiff's failure to exhaust administrative remedies as to this

claim.   Moreover, Plaintiff has not shown that correctional officials impeded his ability to

exhaust administrative remedies.   Defendants are entitled to summary judgment regarding

Plaintiff's claim in count twelve due to Plaintiff's failure to exhaust administrative remedies.

IX. Deliberate Indifference to Serious Medical Needs - Prescription Medication

    In count ten of his Amended Complaint, Plaintiff asserts that the "[p]rescription of

Niacin by Dr. Troutt is deliberately indifferent."   As supporting facts, Plaintiff asserts that

he has a rare "hypercholesterolemia" condition for which Dr. Troutt prescribed Niacin.

However, Plaintiff contends that this medication will not "lower my cholesterol.  It will only

lower my tryglecirides [sic]."   Plaintiff further contends that "Niacin causes false positives

in drug uranalysis [sic] test[s]" and that he "tested positive while taking Niacin at [Great

Plains Correctional Facility] for marijuana although [he] has never smoked it." Plaintiff

alleges he informed Dr. Troutt of this incident but Dr. Troutt prescribed the medication for

Plaintiff and "refused to take me off Niacin and put me on Omega 3 which works on me

without the side effects of Niacin and statins, which cause muscle fatigue, liver/kidney

damage, constipation, and other side effects.  On Niacin, my rare cholesterol disease will

continue to rise, placing me at danger of a stroke."

    Defendants concede that Plaintiff exhausted administrative remedies concerning this

claim. The record shows that Plaintiff's grievance raising this issue, Grievance JCCC-08-88,

was denied.  Defendants contend that Plaintiff has failed to state a claim upon which relief

under 42 U.S.C. § 1983 may be granted.  Because both parties have relied on evidence

outside of the pleadings, and because Plaintiff was advised of his obligations in responding

to Defendants' dispositive motion under Fed. R. Civ. P. 12 and 56, Defendants' motion to dismiss Plaintiff's claim in count ten is construed as a motion for summary judgment.

Plaintiff's claim that Defendants have violated his rights under the Eighth Amendment of the Constitution is governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), in which the Court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Id. at 833.

A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. First, the prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious." Id. at 1230-1231. A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

To satisfy the second element, the plaintiff must "present evidence of the prison

official's culpable state of mind." Id.  This standard is violated if the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir.)(quoting Farmer, 511 U.S. at 837), cert. denied, 549 U.S. 856 (2006).

In count ten, Plaintiff contends that Defendant Troutt's prescription of a Niacin, or B12, vitamin supplement to treat his cholesterol condition[5] caused harm because this medication "will not lower my cholesterol," caused "false positive[ ]" drug urinalysis test results in 2001, and can cause side effects such as muscle fatigue, liver/kidney damage, constipation, and "other [undescribed] side effects." Finally, Plaintiff asserts that consuming this medication instead of "Omega 3" would put him "at danger of a stroke" due to his "rare cholesterol disease."

Plaintiff has submitted an "Affidavit" with his responsive pleading.  His averments in the "Affidavit" reflect that he simply disagreed with Dr. Troutt's prescription of a Niacin supplement to treat his cholesterol condition.  However, "[a] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).  Plaintiff avers in the affidavit that Niacin "has never

_____

[5]The Mayo Clinic's staff has reported that "[n]iacin, a B vitamin, has long been used to increase high-density lipoprotein (HDL), the "good" cholesterol.  HDL cholesterol helps sweep up low-density lipoprotein (LDL), or "bad" cholesterol, in your bloodstream." http://www.mayoclinic.com/health/niacin/CL000036.

lowered" his "high cholesterol." Plaintiff's prison medical records reflect that Plaintiff's lipid levels were tested in July 2008, and the laboratory reported that Plaintiff's low-density lipoprotein (LDL) cholesterol level was high at 176. (Doc. # 47)(Special Report, Ex. 4, at 11, 31). In a follow-up of this laboratory testing, Plaintiff was seen in the JCCC medical clinic on July 10, 2008, and he was prescribed multiple medications on that date, including a daily Niacin supplement of 1000 milligrams. (Doc. # 47)(Special Report, Ex. 4, at 11). On August 11, 2008, Plaintiff was again seen in the JCCC medical clinic for a blood pressure check, and five medications were prescribed for him, including a daily Niacin supplement of 1000 milligrams. (Doc. # 47)(Special Report, Ex. 4, at 12). On September 12, 2008, Plaintiff was prescribed five medications, including a daily Niacin supplement, in order to treat hypertension, Raynaud's syndrome, and mild hyperlipidemia. (Doc. # 47)(Special Report, Ex. 4, at 28). Nothing in Plaintiff's medical records reflect that he complained of or experienced side effects related to taking the Niacin supplement. Plaintiff has not shown that taking this prescribed supplement created an inference of a substantial risk of serious harm to his health or that Dr. Troutt knew of and disregarded a substantial risk of serious harm to Plaintiff's health by prescribing a Niacin supplement to treat Plaintiff's cholesterol condition.

Plaintiff avers that he was taking a Niacin supplement in another correctional facility in 2001 when he failed a drug urinalysis test and was convicted of a disciplinary offense for "test[ing] positive for marijuana." He avers that the disciplinary offense was later overturned and expunged from his record. Plaintiff does not, however, provide documentary evidence of the misconduct or its reversal or even describe what prompted correctional officials to

overturn the misconduct finding.   Even if the 2001 misconduct was overturned because of testing error, Plaintiff's subjective belief that a Niacin supplement caused the "false positive" drug urinalysis test result in 2001 does not create any inference that Dr. Troutt was subjectively aware of a substantial risk of serious harm to Plaintiff's health as a result of prescribing a Niacin supplement for Plaintiff in 2008.

X. Frivolous Complaint

Plaintiff's pleadings, the averments in his "Affidavit," and his administrative RTS and grievance reports filed with JCCC and ODOC officials all reflect consistently exaggerated complaints by Plaintiff of being mistreated, discriminated against, or retaliated against in nearly every facet of his prison life.  Plaintiff's instant action reflects his consistent inability to comply with prison rules or to accept that he is subject to the authority of correctional officials and medical personnel not of his choosing.   Defendants contend that, as a result of Plaintiff's continuous filings of civil rights actions in this Court that have repeatedly been dismissed on procedural grounds and his continuing attempts to manipulate and personally attack correctional officials, the instant cause of action should be deemed frivolous and dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).   At this time, the undersigned declines to make such a finding.  However, Plaintiff is advised that  28 U.S.C. § 1915(e)(2)(B) may be invoked in the future for any civil actions that contain similar allegations reflecting a needlessly harassing and threatening attitude toward correctional officials.

XI. Defendant Arian

Service of process issued in this matter for the only remaining Defendant, Defendant

Arian, was returned unexecuted on July 16, 2009, with the notation that this Defendant had "retired." (Doc. # 41). Plaintiff requested that this Defendant be served at JCCC's business address, and Plaintiff has not taken any further steps to effect service of process upon Defendant Arian. Plaintiff names Defendant Arian only in count one of the Amended Complaint. In count one, as previously set forth herein, Plaintiff asserts that he "suffered kidney damage latter [sic] part of 2007. He complained to ... Arian .... They ordered liver-kidney function test in Jan. 2008. They found out results, but did not inform of results until May 19, 2008, but still no diagnosis or treatment. Three to four months elapsed before he learned what caused crippling cramps." Amended Complaint, at 3. In the background section of his Amended Complaint, Plaintiff also alleges that Defendant Arian, who is identified as a physician's assistant at JCCC, "prescribed medications that damaged [Plaintiff's] kidneys and hid known damage...."

As previously found herein, the undisputed record clearly shows Plaintiff failed to exhaust available administrative remedies concerning his claim asserted in count one of the Amended Complaint, as required by 42 U.S.C. § 1997e(a). Therefore, it is recommended that Defendant Arian be dismissed from the action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) due to Plaintiff's failure to exhaust administrative remedies concerning the claim against this Defendant.

## XII. Rule 56(f) Motion

In his "Affidavit" attached to his responsive pleading Plaintiff has attempted to assert that he is unable to adequately respond to Defendants' Motion for Summary Judgment

41

because he has not been allowed to conduct discovery.   Plaintiff relies on Fed. R. Civ. P. 56(f), which provides that

> [i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Plaintiff's averments in his "Affidavit" do not, however, support a Rule 56(f) motion. He states that he "will be able to prove" he was given a disciplinary misconduct and sanctions for "smoking marijuana" and that the disciplinary misconduct and sanctions were later "overturned and remanded for a new hearing" and he was later "found ... not guilty." This evidence, however, even assuming it exists, ultimately has no bearing on Plaintiff's claim in count ten of deliberate indifference to his medical needs, as discussed in Section IX herein, and Plaintiff has not shown that this evidence has any bearing on his remaining claims.  Therefore, the Rule 56(f) motion is DENIED.


<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Defendants Anderson, McCoy, Clepper, Shaw, Parker, Chester, Troutt, Redman, Denton, Gwinn, Guffy, Frech, Myers, Frech, Irvin, and Deweese's Motion to Dismiss/Motion for Summary Judgment (Doc. # 46, construed as a Motion for Summary Judgment, be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff.  It is further recommended that the cause of

action against Defendant Arian be DISMISSED without prejudice due to Plaintiff's failure to exhaust administrative remedies.  The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____November 16th_____, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this __26th__ day of ____October____, 2009.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE